IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARION NIXON, | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-12-0985 |
| | § | |
| SILVERADO HOSPICE OF HOUSTON, | § | |
| | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This employment case is before the Court on the Motion for Summary Judgment [Doc. # 35] filed by Defendant Silverado Hospice of Houston ("Silverado"), to which Plaintiff Marion Nixon filed a Response [Doc. # 37], Silverado filed a Reply [Doc. # 39], and Plaintiff filed a Sur-Reply [Doc. # 40].[1] The Court has reviewed the full record in this case. Based on this review and the application of relevant legal authorities, the Court **grants in part and denies in part** Defendant's Motion for Summary Judgment.

### I.  BACKGROUND

Plaintiff suffers from Crohn's disease, an autoimmune disease that causes serious inflammation of the gastrointestinal tract. Crohn's disease may cause psoriatic arthritis, which may cause spinal degeneration.

---

[1] The Court **denies** Defendant's Motion to Strike Plaintiff's Sur-Reply [Doc. # 41].

Defendant is a provider of hospice services, providing end-of-life care for its patients. Medicare-certified hospice providers such as Silverado must use volunteers for at least 5% of the total patient care hours of all paid hospice employees and contract staff. *See* 42 C.F.R. § 418.78. Silverado is required to maintain accurate records on the use of volunteers. *See id.* Volunteers would record their hours, describing the work performed and identifying the patients for whom they provided hospice services. The Volunteer Coordinator/Manager at Silverado would compile these hours into a monthly Volunteer Status Report. Quarterly and annual reports were prepared based on the information in the monthly Volunteer Status Reports. The provider was required to maintain these records and have them available for review by Medicare personnel.

Plaintiff began working as an employee of Defendant in July 2007, but she was a volunteer at Silverado prior to that time. Plaintiff was employed as the Volunteer Coordinator/Manager, charged with overseeing the Volunteer Program at Silverado. Plaintiff was hired to work in Silverado's Cypress or "North" office. Later Silverado requested and Plaintiff agreed to work at both the North office and the Sugar Land or "South" office. At the time of her discharge, Plaintiff was working exclusively at the South office.

In 2009 and 2010, Plaintiff represented Silverado at the Texas/New Mexico Hospice Conference. In 2009, she spoke at the Conference on the benefits of pet therapy. Plaintiff ran a very successful pet therapy program at Silverado. In 2010, she spoke at the Conference on the topic of volunteering and how to enhance volunteer programs. Plaintiff also represented Silverado by teaching at Wunsche High School, a trade high school with a medical training program. On at least two occasions, Plaintiff spent three or four days over a two week period teaching at the school. It appears clear from the record that Plaintiff was well-respected and well-liked by the volunteers, who performed certain tasks for her while she was out for her surgeries and who helped her retrieve her personal belongings from Silverado after her termination.

In May 2010, Cynthia Scott was hired as Administrator of Silverado's South office. At that time, Ms. Scott became Plaintiff's immediate supervisor. Ms. Scott testified that she soon began hearing reports that there were problems with the volunteer program, including complaints that requests for volunteers were not being filled. Ms. Scott believed that Plaintiff was too focused on the pet therapy program. Soon thereafter, another individual assumed responsibility for the volunteer program at the North office while Plaintiff remained in charge of the program at the South office.

Plaintiff requested and was granted leave from work in June 2010 for spinal surgery. Plaintiff was on leave for two weeks for surgery and post-surgical recovery. She returned to full-time work at Silverado in her same position and at her same salary.

In October 2010, Plaintiff requested that she be paid on an hourly basis, and Silverado granted her request.

Plaintiff requested and was granted leave from work from October 25, 2010 through November 21, 2010, for a second spinal surgery and post-surgical recovery.[2] She returned to work at Silverado in her same position, but was released by her physician to work only 20 hours per week. Plaintiff was paid for the hours worked at the same hourly rate as before her leave.

In the fall of 2010, while Plaintiff was on medical leave in connection with the second spinal surgery, Silverado began using a computer software program called McKesson. A representative of the McKesson vendor trained Sarah McSpadden, an employee of Silverado's parent company in California. While Plaintiff was on leave for her second surgery, Ms. McSpadden travelled to Houston and trained Silverado's employees to use the McKesson computer software system. Kathleen Walton, the

---

[2] The actual date Plaintiff returned to work after her second surgery is unclear. Plaintiff testified that she returned on November 25, 2010, but Silverado records indicate that she returned on November 21, 2010. It appears that the November 21, 2010 date is likely correct because November 25, 2010 was Thanksgiving day.

Silverado Office Manager, trained Plaintiff to use the McKesson system upon her return to work in November 2010.[3]

In connection with the transfer of information to the McKesson system, Ms. Scott became aware that the volunteer files were not up to date and that the number of volunteer hours reported by Plaintiff in the monthly Volunteer Status Reports were significantly greater than reflected in the volunteers' own reports of their time. Ms. Scott conducted a review of the records. She testified that she determined by early January 2011 that the discrepancies were so extensive that she believed they were falsifications. Plaintiff responds that the discrepancies were primarily the result of her having included hours spent by volunteers assigned to the North office who provided services to patients assigned to the South office. It was Ms. Scott's position that the two offices had separate licenses and, therefore, volunteers assigned to one office could not provide services for patients assigned to the other office. The evidence on this issue is undeveloped in the record before the Court. It is unclear whether hours by North office volunteers providing services to South office patients were counted as South office hours before Ms. Scott became Plaintiff's supervisor. It is also unclear

---

[3] Plaintiff appears to believe that the Silverado employees were trained by an actual trainer from the McKesson vendor itself, who she believes would have necessarily been a better trainer. The record indicates, but is unclear, that only Ms. McSpadden – a Silverado corporate employee – was trained by the trainer from the McKesson vendor. It appears that Ms. McSpadden then trained the Silverado employees in Houston, with the exception of Plaintiff.

whether the documentation of services provided by North office volunteers for South office patients was maintained in the North office where the volunteer was assigned or in the South office where the patient was assigned.

On January 7, 2011, Ms. Scott met with Plaintiff. Although Plaintiff's goal for the year was to recruit five or six volunteers, Ms. Scott inconsistently expressed concern that Plaintiff had recruited "only 11" volunteers during 2010. Ms. Scott also expressed concern that the information in the volunteer files was not up to date. Ms. Scott was very concerned about the discrepancies between the number of volunteer hours reported by Plaintiff in the monthly Volunteer Status Reports and the number of hours reflected in reports prepared by volunteers (at the time they performed the work) and maintained in the South office.

On January 13, 2011, termination documents were prepared, and Plaintiff was informed that her employment with Silverado was terminated effective January 14, 2011.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 21, 2011. On December 22, 2011, the EEOC issued a Notice of Right to Sue. Plaintiff filed this lawsuit in state court on February 9, 2012. Defendant filed a timely Notice of Removal, removing the case to federal court on March 30, 2012. Plaintiff filed an Amended Complaint [Doc. # 9] on

June 22, 2012, asserting claims under the Americans With Disabilities Act ("ADA") and the Family and Medical Leave Act ("FMLA"). After an adequate time to complete discovery, Defendant filed its Motion for Summary Judgment. The Motion has been fully briefed and is now ripe for decision.

## II.  APPLICABLE LEGAL STANDARDS

### A.  Summary Judgment Standard

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits filed in support of the motion, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The moving party bears the burden of demonstrating that there is no evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Nat'l Union Fire Ins. Co. v. Puget Plastics Corp.*, 532 F.3d 398, 401 (5th Cir. 2008). If the moving party meets this initial burden, the burden shifts to the nonmovant to set forth specific facts showing the existence of a genuine issue for trial. *See Hines v. Henson*, 293 F. App'x 261, 262 (5th Cir. 2008) (citing *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004)). The Court construes all facts and considers all evidence in the light most favorable to the nonmoving party. *Nat'l Union*, 532 F.3d at 401.

**B.     ADA**

Under the ADA, a covered employer must provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). The employee bears the responsibility for requesting reasonable accommodations. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007).

The ADA also makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees [and] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To prevail on a claim under the ADA, the plaintiff must first establish a *prima facie* case by showing that she "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action; and (4) was replaced by a non-disabled person or was treated less favorably than non-disabled employees." *Amsel v. Texas Water Dev. Bd.*, 464 F. App'x 395, 399 (5th Cir. Mar. 19, 2012) (citing *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995)). If the employer can articulate a legitimate non-discriminatory reason for the adverse employment action, the plaintiff can prevail by producing evidence that the employer's articulated reason

for the adverse employment action was pretextual. *See EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

### C. FMLA

It is unlawful for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" under the FMLA. *See* 29 U.S.C. § 2615(a)(1). The Department of Labor's regulations provide that interference includes refusing to authorize FMLA leave, restraining or discouraging FMLA leave, and retaliating against employees who exercise FMLA rights. *See* 29 C.F.R. § 825.220.

The FMLA also prohibits employers from discharging an employee for exercising FMLA rights. 29 U.S.C. § 2615(a)(2). An employee who claims she was discharged as retaliation for exercising her rights under the FMLA, must first establish a *prima facie* case of FMLA retaliation by showing that she (1) was protected under the FMLA, (2) suffered an adverse employment action, and (3) was treated less favorably than an employee who had not requested leave under the FMLA or the adverse decision was made because she sought protection under the FMLA. *Mauder v. Metro. Transit Auth.*, 446 F.3d 574, 583 (5th Cir. 2006). Once she has done so, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for terminating the plaintiff's employment. *Id.* Once the employer has satisfied this burden, the plaintiff can prevail by showing that the stated reason is a pretext for

FMLA retaliation. *Id.* Ultimately, the plaintiff must prove that "but for" her FMLA leave, her employment would not have been terminated. *Harris v. Dallas Indep. Sch. Dist.*, 435 F. App'x 389, 393 (5th Cir. Aug. 4, 2011) (citing *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999)).

### III. CLAIMS BASED ON PRE-TERMINATION CONDUCT

#### A. Pre-Termination Requests for Accommodation and for Leave

Plaintiff alleges that Silverado denied her requests for reasonable accommodation in violation of the ADA. The employee bears the responsibility for requesting reasonable accommodations. *See Jenkins v. Cleco Power, LLC*, 487 F.3d 309, 315 (5th Cir. 2007). Defendant is entitled to summary judgment on this claim because Plaintiff has failed to identify or present evidence of any pre-termination request for accommodation that was denied by Silverado.[4]

It is unclear from Plaintiff's Second Amended Complaint and from Plaintiff's Response to Defendant's Motion for Summary Judgment whether she asserts an FMLA claim based on alleged denials of pre-termination requests for FMLA leave. To the extent such a claim is asserted, Defendant is entitled to summary judgment

---

[4] Plaintiff testified in her deposition that she believed Silverado should have hired someone to perform her job while she was on leave. She does not, however, in her Response or Sur-Reply argue that she made this request or that it would have been a reasonable accommodation.

because Plaintiff has failed to identify any pre-termination requests for FMLA leave that were not granted.

### B.     Alleged Interference with Exercise of FMLA Rights

Plaintiff alleges that Silverado interfered with her exercise of FMLA rights when it intentionally discouraged her from continuing on FMLA leave in November 2010. Plaintiff presented evidence that Kathleen Walton, the Office Manager who had responsibility for human resources matters, telephoned her while she was on medical leave in connection with her second spinal surgery in November 2010. Plaintiff testified in her deposition that Ms. Walton, at the request of Ms. Scott, pressured her to return to work. Plaintiff testified that Ms. Walton "demanded" that she come back to work before she obtained a doctor's release. Specifically, Plaintiff testified that Ms. Walton asked her why she was "taking off so much" and commented that she had not taken off as much time in connection with the first spinal surgery. Plaintiff testified that Ms. Walton asked her how much longer she would be away from work and advised her that "they want you back now" because other staff members were going to be away for the Thanksgiving holiday.[5] Plaintiff testified that she felt pressured to return early from the FMLA leave and, as a result, contacted her physician and

---

[5]   Kathleen Walton provided an affidavit in support of Defendant's Motion for Summary Judgment. *See* Walton Affidavit, Exh. D to Motion for Summary Judgment. In the affidavit, Walton does not dispute Plaintiff's description of the November 2010 telephone call or mention it at all.

requested a release to return to work. The physician provided a release, but only for her to work twenty hours per week.

Plaintiff has presented evidence that raises a genuine fact dispute regarding whether Silverado interfered with her FMLA rights by telephoning her in November 2010 to discourage her from remaining on leave following her second spinal surgery. Defendant's Motion for Summary Judgment on this claim is denied.

### C. Termination

Plaintiff alleges that the termination of her employment violated both the ADA and the FMLA. Regarding the ADA claim, Defendant in its Motion for Summary Judgment does not contest that Plaintiff suffers from a disability, was subject to an adverse employment action when she was discharged, and was replaced by a non-disabled person. Defendant argues instead that Plaintiff cannot establish a *prima facie* case that her termination violated the ADA because she was not qualified for her job. This argument lacks merit. Plaintiff clearly has presented evidence that raises a genuine fact dispute on this issue. She had been performing the job for over three years, and had received excellent appraisals. Evidence of past performance with good evaluations is "a recognized method of proving an individual is qualified under the ADA." *Butler v. La. Dept. of Pub. Safety and Corr.*, 2013 WL 2407567, *5 (M.D. La. May 29, 2013) (citing *EEOC v. E.I. DuPont de Nemours*, 480 F.3d 724, 731 (5th Cir.

2007); *McAlpin v. Nat'l Semiconductor Corp.*, 921 F. Supp. 1518 (N.D. Tex. 1996)). Defendant is not entitled to summary judgment on its argument that Plaintiff was not qualified to perform the essential functions of her job as Volunteer Coordinator/Manager.

Plaintiff has presented evidence supporting a *prima facie* case that the termination of her employment violated the FMLA. It is undisputed that, while employed, she was protected under the FMLA and that she suffered an adverse employment action when she was discharged. As discussed more fully below in connection with the pretext issue, Plaintiff has presented evidence that could support a finding that the decision to terminate her employment was because she exercised her rights under the FMLA.

Defendant has articulated a legitimate, non-discriminatory reason for its decision to terminate Plaintiff's employment. Defendant has presented evidence that Plaintiff was significantly behind in updating information in the volunteer files. Defendant has presented evidence also that there were huge discrepancies between the number of volunteer hours submitted by Plaintiff in the monthly Volunteer Status Reports and the number of volunteer hours reported (and documented) by the volunteers themselves. It is clear that these are serious performance issues that could

warrant immediate termination.[6]  This is particularly true regarding the discrepancies identified by Defendant in the number of volunteer hours.  Medicare requires that volunteers provide at least 5% of the total number of hours of hospice services.  The reports prepared by Plaintiff indicated that Silverado was in compliance with this requirement, but the documentation reviewed by Ms. Scott in November and December 2010 indicated that the requirement was not being satisfied.  If the volunteers were not in fact providing at least 5% of the total number of hours providing hospice services, Medicare funding could have been suspended or denied.[7]  The issues with the volunteer files and the discrepancies in the number of volunteer hours were serious, and Defendant has satisfied its burden to articulate a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

---

[6] Plaintiff argues as evidence of pretext that Silverado did not follow its own "Discipline Guideline" when it terminated Plaintiff's employment without first issuing a verbal warning and then a written warning. This argument is without merit. The Discipline Guideline at issue clearly and unambiguously contemplates that there are some infractions that are at a level where only a verbal warning is required, there are other infractions for which a written warning is the first discipline, and there are other infractions – including falsification of company documents – for which the employee may be terminated immediately. *See* Discipline Guideline, Exh. 12 to Plaintiff's Response. As is explained below, Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether she engaged in "falsification" of company documents.

[7] Plaintiff argues that the Medicare issue is irrelevant because Medicare never withdrew funding or otherwise sanctioned Silverado. The Court finds this argument unpersuasive. Medicare audits were conducted without notice and, if an audit revealed that the percentage of volunteer hours were less then 5%, Silverado's Medicare funding would have been in serious jeopardy.

Plaintiff has presented evidence that, when viewed in the light most favorable to her as the non-movant, raises a genuine issue of material fact regarding whether Silverado's articulated reason was pretextual. As mentioned above, Plaintiff received excellent evaluations prior to January 2011. She was away from work for two weeks in June 2010 and for four weeks in November 2010. She had informed Dale Metzger, the Quality Manager for Silverado, that she would likely require leave for at least one additional surgery in the future. She had just returned, allegedly early because of pressure from Silverado, from FMLA leave and was released to work only twenty hours per week. Plaintiff has presented an apparent explanation that the discrepancy in the number of volunteer hours was the result – at least in part – of counting hours worked by volunteers assigned to the North office when they performed services for patients assigned to the South office. Plaintiff also has presented evidence that Metzger personally engaged in serious misconduct by often acting "in an unprofessional manner by yelling at either patients, families, or referral sources for staff." *See* Scott Depo., p. 61. Unlike Plaintiff's situation, Metzger was counseled about these problems and was eventually allowed to resign his employment; he was not involuntarily terminated. In an exercise of caution, the Court concludes that this

evidence cumulatively, when viewed in the light most favorable to Plaintiff, raises a fact dispute on the pretext issue.[8]

## IV. CLAIMS BASED ON POST-TERMINATION CONDUCT

Plaintiff alleges that when she was discharged, she requested an additional two weeks because she had an upcoming appointment with her physician following which she hoped to be released to return to work full time. Plaintiff asserts Defendant's refusal to accede to this request was a failure to accommodate her disability, discrimination on the basis of her disability, and interference with her FMLA rights. These claims fail as a matter of law. ADA protections cease after an employee is terminated. *See Wooten v. Farmland Foods*, 58 F.3d 382, 386 (8th Cir. 1995). This is true because a former employee is not a "qualified" employee protected by the ADA. *See Hammon v. DHL Airways*, 980 F. Supp. 919, 926-27 (S.D. Ohio 1997), *aff'd*, 165 F.3d 441 (6th Cir. 1999). It is uncontroverted that by the time Plaintiff made the request for the two-week delay, her employment with Defendant had been terminated. Defendant had made the decision to terminate her employment and had communicated that decision to Plaintiff. There is no assertion or evidence that anything further was required before the termination was effective.

---

[8] The Court's ruling, of course, is based solely on the summary judgment record, which may be incomplete. Any dispositive motions by Defendant during trial will be evaluated based on the evidence presented at trial.

Similarly, regulations promulgated by the United States Department of Labor provide that the determination whether the employee is an eligible employee "must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). In this case, Plaintiff was not an employee of Silverado when she requested the additional two weeks and, therefore, was not entitled to FMLA leave. Additionally, it appears that Plaintiff was not requesting FMLA leave, but was instead requesting that she be allowed to continue working for at least an additional two weeks.[9] Defendant is entitled to summary judgment on the ADA and FMLA claims based on Plaintiff's post-termination request for an additional two weeks.

## V. COMPENSATORY AND PUNITIVE DAMAGES

Defendant seeks summary judgment that Plaintiff is not entitled to compensatory damages because her ADA and FMLA claims are without merit. Because there are genuine issues of material fact precluding summary judgment on certain claims asserted by Plaintiff, summary judgment is inappropriate on her claim for compensatory damages.

---

[9] It is unclear, but it appears that Plaintiff was requesting that Defendant wait two weeks before terminating her employment. Plaintiff alleges that she had an appointment with her doctor and hoped to be able to return to work full time at that time. It appears that Plaintiff believed her performance problems would be resolved if she could work full time.

Defendant also seeks summary judgment on Plaintiff's claim for punitive damages. Punitive damages are available under the ADA and the FMLA when the evidence shows that "the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.'" *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 529–30 (1999) (quoting 42 U.S.C. § 1981a(b)(1)); *see also EEOC v. E.I. DuPont de Nemours*, 480 F.3d 724, 732 (5th Cir. 2007) (applying *Kolstad* in ADA case); *Hardin v. Caterpillar, Inc.*, 227 F.3d 268, 269-70 (5th Cir. 2000) (applying *Kolstad* in FMLA case). "An employer cannot be assessed punitive damages if it reasonably believes its discrimination is lawful." *Kolstad*, 527 U.S. at 537. The "reasonable belief" relates to "whether it is reasonable to discriminate in making an employment decision." *See Clements v. Fitzgerald's Miss., Inc.*, 128 F. App'x 351, 353 (5th Cir. Apr. 5, 2005). For example, in *Kolstad*, the Supreme Court noted that punitive damages may be unavailable because the "underlying theory of discrimination may be novel or otherwise poorly recognized, or an employer may reasonably believe that its discrimination satisfies a bona fide occupational qualification defense or other statutory exception to liability." *Kolstad*, 527 U.S. at 537. There are genuine issues of material fact in this case regarding whether Silverado acted with the requisite mental state to support an award of punitive damages, or whether it can successfully

assert a *Kolstad* defense to Plaintiff's punitive damages claim. Defendant's Motion for Summary Judgment on Plaintiff's claim for compensatory and punitive damages is denied.

## VI.    CONCLUSION AND ORDER

Plaintiff's ADA and FMLA claims based on Defendant's refusal to grant her request for two more weeks until her appointment with her physician fail as a matter of law because the request was made after Plaintiff's employment with Defendant was terminated. Plaintiff has failed to identify any pre-termination accommodations that she requested that were not provided and, as a result, Defendant is entitled to summary judgment on the ADA failure-to-accommodate claim. Defendant is entitled to summary judgment on Plaintiff's FMLA claim to the extent it is based on an alleged denial of FMLA leave because Plaintiff has failed to identify any pre-termination requests for FMLA leave that were denied. Plaintiff has presented evidence which, when viewed in the light most favorable to her as the non-movant, raises a genuine issue of material fact regarding her FMLA claim based on the alleged interference with her FMLA leave by discouraging her from remaining on leave in November 2010, and on her ADA and FMLA claims based on the termination of her employment. Genuine issues of material fact preclude summary judgment on Plaintiff's claims for compensatory and punitive damages. Consequently, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 35] is **GRANTED** on Plaintiff's claims based on the failure to grant her post-termination request for two more weeks, on the ADA failure-to-accommodate claim, and on the FMLA claim based on an alleged failure to provide FMLA leave. It is further

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 35] is **DENIED** as to the FMLA interference claim based on the November 2010 telephone call from Kathleen Walton discouraging Plaintiff from remaining on FMLA leave, and as to the ADA and FMLA claims relating to the termination of her employment.

The parties' Joint Pretrial Order remains due **September 16, 2013**, and the case remains scheduled for docket call on **September 30, 2013**.

SIGNED at Houston, Texas, this **31st** day of **July, 2013.**

Nancy F. Atlas
United States District Judge